PAUL B. SNYDER
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

✓ FILED
___ LODGED
___ RECEIVED

**February 26, 2008**

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____ DEPUTY

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WASHINGTON AT TACOMA

| In re: | Case No. 00-36568 |
|---|---|
| Douglas M. Ray, | **MEMORANDUM DECISION** |
| Debtor. | **NOT FOR PUBLICATION** |

THIS MATTER came before the Court on February 5, 2008, on the Motion for Summary Judgment filed by the Estate of Irwin P. Jessen (Jessen Estate), seeking to prevent a collateral attack of this Court's Order Approving Sale of Real Estate Free and Clear of Liens and Encumbrances for Revised Sale Price entered on November 1, 2005. Battle Ground Plaza, LLC (BG Plaza LLC) filed a Brief in Response to Motion for Summary Judgment, contending that this Court's prior orders do not preclude it from seeking specific performance of its right of first refusal in state court. At the conclusion of the hearing, the Court took the matter under advisement. This Memorandum Decision shall constitute Findings of Fact and Conclusions of Law as required by Fed. R. Bankr. P. 7052. This is a core proceeding under 28 U.S.C. § 157(b)(2). The Court has the jurisdiction to enter a final order under 28 U.S.C. § 1334, 28 U.S.C. § 157, 28 U.S.C. § 151.

MEMORANDUM DECISION - 1

# I

# FINDINGS OF FACT

The relevant facts are not in dispute. Douglas M. Ray (Debtor) filed a Chapter 11 petition on August 10, 2000. At the time the petition was filed, the Debtor and Irwin P. Jessen (Jessen) were co-owners of commercial real estate consisting of a shopping center commonly known as the Battle Ground Plaza Shopping Mall (BG Plaza Property). In December, 2000, the Debtor and Jessen entered into a purchase and sale agreement with Bruce Feldman, Inc. for the sale of the BG Plaza Property (BG Plaza P&S Agreement). The Court approved the sale on June 8, 2001. The BG Plaza P&S Agreement included a right of first refusal for an adjoining 1/2 acre vacant parcel (1/2 Acre Parcel) owned by the Debtor and Jessen. The right of first refusal provides in relevant part as follows:

> This Right of First Refusal means that Seller may not sell or become contractually obligated to sell the adjacent parcel without giving written notice to Purchaser of all of the terms and conditions upon which Seller is willing to sell the adjacent property and giving Purchaser the opportunity to buy the adjacent land on those terms. Purchaser shall have seventy-two (72) hours from receipt of any such written notice within which to accept Seller's offer by serving a written and signed acceptance upon Seller . . . . [I]n the event that Seller becomes willing to sell upon terms that are different than those contained in the original notice, then Purchaser's Right of First Refusal shall again apply and must be satisfied (including a new notice) before sale or voluntary transfer of the adjacent property to any other party.

In December, 2002, the Debtor and Jessen executed and recorded a Deed of Easement, as contemplated in a "counter offer" executed when the BG Plaza P&S Agreement was signed. This easement conveyed a 35-foot wide strip over the BG Plaza Property from 219th Street to the 1/2 Acre Parcel for ingress and egress. Feldman subsequently assigned his interest under the BG Plaza P&S Agreement to BG Plaza LLC.

An order confirming the Debtor's Third Amended Plan of Reorganization (Plan) was entered on March 7, 2002. The terms of the confirmed Chapter 11 Plan provided for the sale of the 1/2 Acre Parcel either under the terms of the right of first refusal held by BG Plaza LLC or to another third party should BG Plaza LLC not elect to exercise that right. The Plan further provided that the Bankruptcy Court would retain jurisdiction "to determine any controversies in connection with assets of the bankruptcy estate . . . ."

In June, 2005, the Debtor and Jessen entered into a purchase and sale agreement dated May 18, 2005 (1/2 Acre P&S Agreement) to sell the 1/2 Acre Parcel to Dean Maldonado (Maldonado). The following conditions were contained within the 1/2 Acre P&S Agreement:

> 3. <u>Conditions to Purchase.</u> Buyer's obligation to purchase the Property is conditioned on the following . . . <u>Review and acceptance of the cross parking agreements and a satisfactory Level I Environmental Survey</u> . . . .
>
> 5. <u>Seller's Documents.</u> Within <u>ten (10)</u> days after the Execution Date, Seller shall deliver to Buyer, at Buyer's address shown below, legible and complete copies of the following documents and other items relating to the ownership, operation, and maintenance of the Property, to the extent now in existence and to the extent such items are within Seller's possession or control: <u>Cross easement for access and parking, rules for shopping center, management and advertising</u>.

(emphasis in original). BG Plaza LLC was notified of the proposed sale by way of a letter dated May 27, 2005, which included a copy of the 1/2 Acre P&S Agreement. BG Plaza LLC elected not to exercise its right of first refusal. BG Plaza LLC instead filed an objection to the sale, but did so on grounds other than an assertion that it needed more information regarding terms of the sale or that it was not being provided all of the terms of the sale. Overruling this objection, on July 5, 2005, the Court entered an order approving the sale of the 1/2 Acre Parcel to Maldonado free and clear of liens and encumbrances pursuant to 11 U.S.C. § 363,

MEMORANDUM DECISION - 3

including the right of first refusal granted BG Plaza LLC (July, 2005 Sale Order). The July, 2005 Sale Order was never appealed.

In August, 2005, counsel for Jessen prepared a Reciprocal Easement Agreement. Within this agreement, the BG Plaza Property is referred to as "Parcel 1," and the 1/2 Acre Parcel is referred to as "Parcel 2." The agreement provides in relevant part as follows:

> JESSEN & RAY and MALDONADO wish to establish an easement for the mutual use of a common driveway and cross parking for customers by Parcels 1 and 2 and to provide for the maintenance of the driveway. The driveway shall be the established driveway presently located on Parcel 1 and the cross parking shall be the existing parking areas on Parcel 1 and the parking areas designated on Parcel 2's site plan ("Easement Area").

On August 5, 2005, counsel for Jessen sent a draft of the document to the Debtor's attorney, the selling agent, and Maldonado. The Reciprocal Easement Agreement, however, was not executed at this time.

A sewer pipe was later discovered on the 1/2 Acre Parcel that needed to be removed. The parties subsequently entered into an addendum to the 1/2 Acre P&S Agreement on October 8, 2005, reducing the purchase price from $380,000 to $365,000 and modifying the closing date to November 15, 2005, with a possible 30-day extension (Addendum B). The reduction in price related to the cost of removing the sewer pipe by Maldonado. By letter dated October 18, 2005, BG Plaza LLC was notified of the modified sale and provided a copy of Addendum B. On October 21, 2005, BG Plaza LLC gave notice of its intent to exercise its right of first refusal. On October 24, 2005, the Debtor filed a motion to approve the modified sale of the 1/2 Acre Parcel to Maldonado. By letter dated October 25, 2005, BG Plaza LLC requested all cross parking agreements and other documents from the Debtor and Jessen. The record indicates that the Reciprocal Easement Agreement was not provided by Jessen's

MEMORANDUM DECISION - 4

Case 00-36568-PBS    Doc 386    Filed 02/26/08    Ent. 02/26/08 11:30:33    Pg. 4 of 14

counsel because he believed BG Plaza LLC did not have an interest in the 1/2 Acre Parcel and thus had no reason for having a copy of the agreement.

On October 27, 2005, BG Plaza LLC objected to the proposed sale, asserting that it had met the conditions of the right of first refusal. BG Plaza LLC also argued that the Debtor and Jessen were obligated to produce certain documents, including cross parking easements.

After a court hearing on November 1, 2005, the Court rendered a decision approving the sale of the 1/2 Acre Parcel to Maldonado (November, 2005 Sale Order). The November, 2005 Sale Order approved the sale free and clear of liens and encumbrances pursuant to 11 U.S.C. § 363, including the right of first refusal granted to BG Plaza LLC. The Court determined that BG Plaza LLC's attempt to exercise the right of first refusal was not sufficient in that the terms of its offer were different than proposed in Addendum B. For example, BG Plaza LLC did not propose to close as required by Addendum B.

On November 4, 2005, BG Plaza LLC filed a motion to alter or amend the Court's November, 2005 Sale Order pursuant to Fed. R. Bankr. P. 9023 and Fed. R. Civ. P. 59(e). On November 9, 2005, this Court found that BG Plaza, LLC made no showing of manifest error, new facts, or legal authority that could not have been brought to the attention of the Court earlier with reasonable diligence, and entered an order denying BG Plaza LLC's motion (Order Denying Motion for Reconsideration). BG Plaza LLC did not appeal the November, 2005 Sale Order or the Order Denying Motion for Reconsideration.

On November 23, 2005, the Debtor, Jessen and Maldonado executed the Reciprocal Easement Agreement. The Debtor and Jessen conveyed the property to Mills End, LLC, an assignee of Maldonado, by statutory warranty deed recorded November 30, 2005. A final

decree closing the case was entered on December 29, 2005.  Thereafter, Maldonado constructed a building on the 1/2 Acre Parcel.  He has since leased spaces in the building.

In June, 2006, BG Plaza LLC obtained a copy of the Reciprocal Easement Agreement executed by the Debtor, Jessen and Maldonado on November 23, 2005.  BG Plaza LLC states that it was unaware of this agreement until that time.  On July 5, 2006, BG Plaza LLC commenced a lawsuit in the Clark County Superior Court (State Court) against the Debtor and other interested parties for specific performance, damages and declaratory relief.  In this action, BG Plaza LLC alleges that the Debtor and Jessen did not comply with the terms of the right of first refusal in that they failed to advise BG Plaza LLC of their intent to execute the Reciprocal Easement Agreement.

On December 12, 2006, the State Court issued a letter ruling remanding certain portions of the case to this Court for further proceedings.  An order reopening the bankruptcy case was entered on January 8, 2007.  On January 19, 2007, an Order Remanding Matter to U.S. Bankruptcy Court for the Western District of Washington was entered by the State Court.  The State Court retained jurisdiction over certain cross-claims filed by Maldonado and other related parties.

The Debtor asked this Court to retain jurisdiction to determine the effect of this Court's prior rulings on the causes of action remanded by the State Court.  On August 28, 2007, the Court entered an order retaining jurisdiction to review the effect its prior orders had on the State Court proceedings.  The Court determined that the issue would be heard as a contested matter pursuant to Fed. R. Bankr. P. 9014.  In its decision, the Court noted that counsel for BG Plaza LLC conceded that the matter could have come before the Court as a Fed. R. Civ.

P. 60(b) (Rule 60(b)) motion, but that counsel instead chose to file a complaint in State Court because of a belief that both courts have jurisdiction.

On January 11, 2008, the Jessen Estate filed a Motion for Summary Judgment, asserting that (1) there are no issues of material fact that Jessen and the Debtor gave BG Plaza LLC notice of all conditions upon which they would sell the 1/2 Acre Parcel, and (2) this Court ruled in its decision on the November, 2005 Sale that BG Plaza LLC was not entitled to a copy of any parking agreements referenced in the 1/2 Acre P&S Agreement because BG Plaza LLC had not properly exercised its right of first refusal. In its response, BG Plaza LLC argued that the Reciprocal Easement Agreement was a new term and condition of the sale of the 1/2 Acre Parcel, and that it should have been given notice of this term either at the time it was drafted in August, 2005, or when it was executed in November, 2005. Both parties filed additional responsive pleadings on the summary judgment motion.

**II**

**CONCLUSIONS OF LAW**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment should be granted if, after taking all reasonable inferences in the nonmoving party's favor, the court finds that no reasonable jury could find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505 (1986).

**A. Allegation that the Court Previously Ruled that BG Plaza LLC Was Not Entitled to a Copy of the Parking Agreements**

The Jessen Estate relies on the assertion that this Court ruled at the November 1, 2005 hearing that BG Plaza LLC was <u>not</u> entitled to a copy of the parking agreements. This

MEMORANDUM DECISION - 7

assertion is not correct. It was not referenced in the November, 2005 Sale Order, nor was it contained in the Court's oral findings of fact and conclusions of law given on November 1, 2005. Consequently, any summary judgment argument based on this factual allegation fails.

**B.     BG Plaza LLC's Collateral Attack of the Sale Approved Pursuant to 11 U.S.C. § 363**

A review of numerous circuit and bankruptcy court decisions indicates that other than the appeal of the sale order, the only method to collaterally attack a sale is by a motion to vacate the sale order under Fed. R. Civ. P. 60(b), made applicable by Fed R. Bankr. P. 9024. See Lange v. Schropp (In re Brook Valley VII, Joint Venture), 496 F.3d 892, 899 (8th Cir. 2007) (where the circuit court held that Rule 60(b) governs the ability to obtain relief from a sale order, which is a final judgment); Newman Grill Sys., LLC v. Ducane Gas Grills, Inc. (In re Ducane Gas Grills, Inc.), 320 B.R. 324, 333 (Bankr. D.S.C. 2004) (where the bankruptcy court noted that an individual may challenge an order authorizing a sale of estate assets by either (1) objecting to the proposed sale and then appealing the sale order, or (2) attacking the order collaterally pursuant to Rule 60(b)).

This Court initially approved the 1/2 Acre P&S Agreement on July 5, 2005, over BG Plaza LLC's objection. BG Plaza LLC did not appeal the July, 2005 Sale Order, and the time for appeal has passed. "The law is fairly well-settled that 'an order confirming a sale of assets is considered a final judgment.'" Third Nat'l Bank v. Fischer (In re Fischer), 184 B.R. 293, 301 (Bankr. M.D. Tenn. 1995) (quoting Cedar Island Builders, Inc. v. S. County Sand & Gravel, Inc. (In re Cedar Island Builders, Inc.), 151 B.R. 298, 300 (D.R.I. 1993)).

On November 1, 2005, over BG Plaza LLC's objection, the Court approved an amended sale order based on Addendum B, which changed, in part, the 1/2 Acre P&S

Agreement. BG Plaza LLC sought reconsideration of the November, 2005 Sale Order, which this Court denied. BG Plaza LLC did not appeal the November, 2005 Sale Order or the Order Denying Reconsideration. These orders are final.

Presumably, BG Plaza LLC would argue that it did not appeal the two sales orders because it did not know of the Reciprocal Easement Agreement until after the orders were entered. Nonetheless, rather than seek relief in this Court by way of a Rule 60(b) motion, BG Plaza LLC chose to file suit in State Court, claiming that it was denied its right of first refusal because Jessen and the Debtor failed to provide all of the terms of the sale, an issue never raised with this Court at the time of the original sale. "Even though an action has an independent purpose and contemplates some other relief, it is a collateral attack if it must in some fashion overrule a previous judgment." Miller v. Meinhard-Commercial Corp., 462 F.2d 358, 360 (5th Cir. 1972) (citing Mitchell v. Village Creek Drainage Dist., 158 F.2d 475, 478 (8th Cir. 1946), in the context of a collateral attack on a bankruptcy court order); see also Ducane Gas Grills, Inc., 320 B.R. at 333 (where the court held that plaintiffs' adversary complaint, which plaintiffs filed rather than filing a motion for relief pursuant to Rule 60(b), represented "an improperly disguised collateral attack on the Sale Order.").

Among the relief requested in its State Court lawsuit, BG Plaza LLC seeks specific performance entitling it to exercise its right of first refusal on the 1/2 Acre P&S Agreement. There can be no doubt that the relief requested by BG Plaza LLC would require the Court to undo or overrule the orders approving the sale of the 1/2 Acre Parcel made pursuant to 11 U.S.C. § 363. Thus, BG Plaza LLC is attempting to impermissibly collaterally attack the § 363 sale of the 1/2 Acre Parcel by way of the State Court lawsuit.

BG Plaza LLC, however, argues that it is not precluded by res judicata from pursuing its action because the elements for this doctrine are not satisfied. Normal principles of res judicata are not necessary, however, to bar BG Plaza LLC's claims to the extent those claims relate to the sale of the 1/2 Acre Parcel. Regions Bank v. J.R. Oil Co., LLC, 387 F.3d 721, 731 (8th Cir. 2004). "A bankruptcy sale under 11 U.S.C. § 363, free and clear of all liens, is a judgment that is good as against the world, not merely as against parties to the proceedings." Regions Bank, 387 F.3d at 732. Thus, while a suit may not be barred by res judicata, "it is barred. A proceeding under section 363 is an *in rem* proceeding. It transfers property rights, and property rights are rights good against the world, not just against parties to a judgment or persons with notice of the proceeding." Gekas v. Pipin (In re Met-L-Wood Corp., 861 F.2d 1012, 1017 (7th Cir. 1988). "The judgment, therefore, is shielded from collateral attack not by res judicata, but by virtue of the nature of rights transferred under 11 U.S.C. § 363." Regions Bank, 387 F.3d at 732.

The policy behind the finality of 11 U.S.C. § 363 sales supports this result. The Seventh Circuit Court of Appeals recognized the "highly relevant concern with the importance of finality in judicial sales in bankruptcy." Met-L-Wood Corp., 861 F.2d at 1018.

> As explained in Webcor, "[i]f parties are to be encouraged to bid at judicial sales there must be stability in such sales and a time must come when a fair bid is accepted and the proceedings are ended." In re Webcor, 392 F.2d at 899. This policy of finality protects confirmed sales unless "compelling equities" outweigh the interest in finality. In re Transcontinental Energy, 683 F.2d 326, 328 (9th Cir. 1982); Matter of Cada Investments, Inc., 664 F.2d 1158, 1162 (9th Cir. 1981).

In re Chung King, Inc., 753 F.2d 547, 550 (7th Cir. 1985) (citations omitted). Thus, a bankruptcy court may vacate a prior sale order only in "very limited circumstances," including "fraud, mistake or a like infirmity," and through the procedure set forth in Rule 60(b). Chung

MEMORANDUM DECISION - 10

King, Inc., 753 F.3d at 549-50; see Mulvania v. United States (In re Mulvania), 214 B.R. 1, 8-9 (9th Cir. BAP 1997) (where Ninth Circuit Bankruptcy Appellate Panel relying on Seventh Circuit Met-L-Wood Corp., 861 F.2d at 1018, held that a bankruptcy court no longer has an inherent power to reconsider its prior orders, but rather its power to reconsider is governed by Fed. R. Bankr. P. 9024 applying Fed. R. Civ. P. 60).

This policy concern is evident in 11 U.S.C. § 363(m), which provides that "even a reversal on appeal of the order authorizing or confirming the sale will not affect the sale's validity if the buyer was acting in good faith and the sale had not been stayed pending appeal." Met-L-Wood Corp., 861 F.2d at 1018. Thus,

> [a] bankruptcy court may vacate a prior order confirming a sale in only the most limited of circumstances, such as fraud or mistake. Although mere inadequacy of price or minor errors might justify a refusal to approve a sale, these would be insufficient to justify vacating approval previously granted. Once approval has been granted, the order is not subject to collateral attack, because the approval of a sale under section 363 is an *in rem* proceeding and is therefore good as against the world, not just as against those who were actual parties in the chapter 11 cases.

3 L. King, Collier on Bankruptcy ¶ 363.11, p. 363-88, 89 (15th ed. rev. 2007) (citations omitted).

Neither party has cited a Ninth Circuit Court of Appeals decision that would suggest this Court should take an approach different from that taken by both the Seventh and Eighth Circuit Courts of Appeal regarding the finality of sale orders. "The Ninth Circuit cautions against creating unnecessary intercircuit conflicts." Mulvania, 214 B.R. at 9 (citing In re Taffi, 68 F.3d 306, 308 (9th Cir. 1995)). "This is especially true when a lower federal court is addressing an issue already decided by another circuit court." In re Mulvania, 214 B.R. at 9.

The Court concludes that there are no issues of material fact regarding the nature of the State Court lawsuit and the procedural posture of the 11 U.S.C. § 363 proceedings in this

MEMORANDUM DECISION - 11

bankruptcy case. Since the sale orders were not appealed and remain valid, and since BG Plaza LLC has not pursued relief in this Court pursuant to Rule 60(b), the Jessen Estate is entitled to summary judgment as a matter of law. The Court is aware that BG Plaza LLC has alleged misconduct and deception by certain parties during the sale. Whether BG Plaza LLC may still seek relief in the bankruptcy court pursuant to Rule 60(b), however, is not before the Court. The § 363 sale orders are final orders good against the world, and they may not be collaterally attacked in the State Court action.

**C.      Jessen and the Debtor Complied with the Terms of the Right of First Refusal**

Notwithstanding the above, a second basis for granting the Jessen Estate's motion for summary judgment is that the undisputed facts before the Court establish that Jessen and the Debtor complied with the notice requirements of the right of first refusal.

The right of first refusal required Jessen and the Debtor to given written notice of "all terms and conditions upon which Seller is willing to sell" the 1/2 Acre Parcel. Paragraphs three and five of the 1/2 Acre P&S Agreement set forth that the buyer's (Maldonado's) obligation to purchase the property was conditioned on his "[r]eview and acceptance of the cross parking agreements . . . ." It also required Jessen and the Debtor to provide Maldonado documents relating to "[c]ross easement for access and parking rules for shopping center . . . ." There is no dispute that in May, 2005, BG Plaza LLC received a copy of the 1/2 Acre P&S Agreement. A reasonable person could only conclude that Paragraphs three and five placed BG Plaza LLC on notice that Maldonado desired a cross parking easement for purposes of the 1/2 Acre Parcel, and, therefore, that Jessen and the Debtor were willing to sell the 1/2 Acre Parcel under these conditions. This conclusion is especially true given the parties' prior dealings concerning the BG Plaza Property and the 1/2 Acre Parcel; the proximity of these

MEMORANDUM DECISION - 12

two properties; the "counter offer" requiring the Debtor and Jessen to provide Feldman an easement and parking usage agreement; and the Deed of Easement entered into by the Debtor and Jessen in December, 2002.

There is no evidence, however, that at the time of the July, 2005 sale, BG Plaza LLC requested any information from Jessen and/or the Debtor regarding such documents. Moreover, although BG Plaza LLC objected to the initial sale, it did <u>not</u> do so on grounds that it needed more information regarding the cross parking easements. Additionally, BG Plaza elected not to exercise its right of first refusal at that time. As such, when the Court entered the July, 2005 Sale Order approving the sale based on the 1/2 Acre P&S Agreement, and when BG Plaza chose not to appeal this order, BG Plaza waived its right to contest the unchallenged terms contained within the 1/2 Acre P&S Agreement.

BG Plaza LLC appears to argue, however, that the terms in Paragraphs three and five changed when Jessen's counsel drafted the Reciprocal Easement Agreement in August, 2005, thereby re-activating its right to notice under the right of first refusal. Viewing the evidence in the light most favorable to the nonmoving party, the Court still concludes otherwise. As persuasively argued at the February 5, 2005 hearing, the Reciprocal Easement Agreement was not a new term of the approved 1/2 Acre P&S Agreement. Rather, it was merely a fulfillment of the arrangements contemplated by and set forth in Paragraphs three and five. Under BG Plaza LLC's approach, parties to a purchase and sale agreement could not years later execute a document that was contemplated by an agreement, or that may change the original terms, without retriggering a party's right of first refusal. This would lead to endless litigation and undermine the policy of finality of a court-approved sale.

Furthermore, in this case, if BG Plaza LLC had had concerns about possible or probable cross parking easements, it could have raised these concerns when it first was presented the 1/2 Acre P&S Agreement. It did not. The undisputed evidence establishes from the time that the BG Plaza P&S Agreement and counter offer were executed in 2000, BG Plaza LLC was well acquainted with access issues concerning the 1/2 Acre Parcel. It should not now be allowed to have a second "bite at the apple" when it failed to act the first time around.

This analysis applies equally to BG Plaza LLC's argument that they should have received notice when the Reciprocal Easement Agreement was actually executed after the sale was approved. As concluded above, the Reciprocal Easement Agreement was not a new term and condition of the sale. Moreover, as argued by the Jessen Estate, the November, 2005 Sale Order ordered sale of the 1/2 Acre Parcel free and clear of BG Plaza LLC's right of first refusal. This order became final after BG Plaza failed to appeal.

Accordingly, the Jessen Estate is entitled to summary judgment as a matter of law on the basis that the sale approved pursuant to 11 U.S.C. § 363 may not be collaterally attacked by way of the State Court action.

DATED: February 26, 2008

*Paul B. Snyder*

Paul B. Snyder
U.S. Bankruptcy Judge

MEMORANDUM DECISION - 14