PAUL B. SNYDER
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

✓ FILED
___ LODGED
___ RECEIVED

**July 28, 2009**

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____DEPUTY

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WASHINGTON AT TACOMA

| In re: | Case No. 00-36568 |
|---|---|
| Douglas M. Ray, | **MEMORANDUM DECISION** |
| Debtor. | **NOT FOR PUBLICATION** |

THIS MATTER came before the Court on June 30, 2009, on the Motion for Summary Judgment filed by the Estate of Irwin P. Jessen (Jessen Estate) and joined by Douglas M. Ray (Debtor), requesting the Court exercise jurisdiction of, and dismiss, the declaratory judgment action of Battle Ground Plaza, LLC (BG Plaza LLC) regarding a priority dispute in the Battle Ground Plaza Shopping Mall. BG Plaza LLC filed a response, contending that this Court does not have jurisdiction to hear this matter, but in the alternative, that it is entitled to summary judgment on its declaratory judgment action. At the conclusion of the hearing, the Court took the matter under advisement. This Memorandum Decision shall constitute Findings of Fact and Conclusions of Law as required by Fed. R. Bankr. P. 7052.

MEMORANDUM DECISION - 1

# I

# FINDINGS OF FACT

On August 10, 2000, the Debtor filed a chapter 11 bankruptcy petition. At that time, the Debtor and Irwin P. Jessen (Jessen) were co-owners of commercial real estate consisting of a shopping center known as the Battle Ground Plaza Shopping Mall (BG Plaza Property). In December 2000, the Debtor and Jessen entered into a purchase and sale agreement with Bruce Feldman, Inc. for the sale of the BG Plaza Property (BG Plaza Agreement). The BG Plaza Agreement included a right of first refusal for an adjoining ½ acre vacant parcel (1/2 Acre Parcel) owned by the Debtor and Jessen. On June 8, 2001, this Court approved the sale. Bruce Feldman, Inc. subsequently assigned its interest under the BG Plaza Agreement to BG Plaza LLC.

In December, 2002, the Debtor and Jessen executed and recorded a Deed of Easement, as contemplated in a "counter offer" executed when the BG Plaza Agreement was signed. This easement conveyed a 35-foot wide strip over BG Plaza Property to the ½ Acre Parcel for ingress and egress, but did not provide for cross parking on the two lots.

An Order confirming the Debtor's Third Amended Plan of Reorganization (Plan) was entered on March 7, 2002. The Plan acknowledges the BG Plaza Agreement and authorizes the Debtor and Jessen to accept backup offers in the event the pending sale fails to close. The Plan also provides for the sale of the ½ Acre Parcel, and states in paragraph 23 that the Court will retain jurisdiction "to determine any controversies in connection with assets of the bankruptcy estate . . . ."

On March 8, 2002, BG Plaza LLC filed in Clark County Superior Court (State Court) a Complaint: Breach of Contract/Specific Performance against the Debtor and Jessen (2002

State Court Case). This action sought specific performance and damages arising from the contract to purchase the BG Plaza Property. On April 5, 2002, BG Plaza LLC filed a lis pendens in connection with the action. On May 30, 2008, the State Court entered an Amended Order of Specific Performance in the 2002 State Court Case. The Jessen Estate[1] subsequently appealed the Amended Order to the Washington State Court of Appeals and posted supersedeas bonds staying enforcement of the State Court's order pending appeal. Argument on this appeal is expected not earlier than January, 2010.

In June, 2005, the Debtor and Jessen entered into a purchase and sale agreement dated May 18, 2005 (1/2 Acre Parcel Agreement) to sell the ½ Acre Parcel to Dean Maldonado (Maldonado). The following conditions were contained within the 1/2 Acre Parcel Agreement:

> 3. <u>Conditions to Purchase.</u> Buyer's obligation to purchase the Property is conditioned on the following . . . <u>Review and acceptance of the cross parking agreements and a satisfactory Level I Environmental Survey</u> . . . .
>
> 5. <u>Seller's Documents.</u> Within <u>ten (10)</u> days after the Execution Date, Seller shall deliver to Buyer, at Buyer's address shown below, legible and complete copies of the following documents and other items relating to the ownership, operation, and maintenance of the Property, to the extent now in existence and to the extent such items are within Seller's possession or control: <u>Cross easement for access and parking, rules for shopping center, management and advertising</u>.

(Emphasis in original). BG Plaza LLC filed an objection to the sale. Overruling this objection, on July 5, 2005, the Court entered an order approving the sale of the 1/2 Acre Parcel to Maldonado free and clear of liens and encumbrances pursuant to 11 U.S.C. § 363.

---

[1] Irwin P. Jessen died on September 23, 2006.

MEMORANDUM DECISION - 3

In August, 2005, counsel for Jessen prepared a Reciprocal Easement Agreement (REA), providing for cross-parking privileges on the BG Plaza Property and ½ Acre Parcel. The REA, however, was not executed at this time.

The parties subsequently entered into an addendum to the 1/2 Acre Parcel Agreement on October 8, 2005. On October 24, 2005, the Debtor filed a motion to approve the modified sale of the 1/2 Acre Parcel to Maldonado. BG Plaza LLC objected to the proposed sale, asserting that it had met the conditions of the right of first refusal. BG Plaza LLC also argued that the Debtor and Jessen were obligated to produce certain documents, including cross parking easements.

After a Court hearing on November 1, 2005, the Court rendered a decision approving the sale of the 1/2 Acre Parcel to Maldonado (November 2005 Sale Order). The November 2005 Sale Order, drafted by the Debtor's attorneys, approved the sale free and clear of liens and encumbrances pursuant to 11 U.S.C. § 363, and provided in relevant part as follows:

> This sale is made pursuant to the terms of the parties' Purchase and Sale Agreement and Receipt for Earnest Money dated May 18, 2005, together with the addendum previously filed with this Court, and the Addendum "B" which is attached as Exhibit "A" to the motion, free and clear of liens and encumbrances pursuant to 11 USC § 363, including but not limited to the right of first refusal granted to Battle Ground Plaza, LLC . . . .

On November 4, 2005, BG Plaza LLC filed a motion to alter or amend the Court's November, 2005 Sale Order pursuant to Fed. R. Bankr. P. 9023 and Fed. R. Civ. P. 59(e). On November 9, 2005, the Court denied BG Plaza LLC's motion (Order Denying Motion for Reconsideration). BG Plaza LLC did not appeal the November, 2005 Sale Order or the Order Denying Motion for Reconsideration.

On November 23, 2005, the Debtor, Jessen and Maldonado executed the REA. The Debtor and Jessen conveyed the ½ Acre Parcel to Mills End, LLC, an assignee of Maldonado,

MEMORANDUM DECISION - 4

by statutory warranty deed recorded November 30, 2005. A final decree closing the case was entered on December 29, 2005. Thereafter, Maldonado constructed a building on the 1/2 Acre Parcel. He has since leased spaces in the building. BG Plaza LLC represents that Mills End, LLC ultimately conveyed its interest in the ½ Acre Parcel to DRKBG, LLC. The cited excerpt of Maldonado's deposition, however, does not support this representation. Thus, the Court will refer to Maldonado rather than DRKBG, LLC, as necessary when addressing BG Plaza LLC's arguments.

On July 5, 2006, BG Plaza LLC filed a Complaint for Specific Performance, Damages, and Declaratory Relief (2006 State Court Complaint) in State Court against Maldonado, Mills End, LLC, Mills End Center, LLC, DRKBG, LLC, the Debtor, and Jessen, alleging two claims. The first claim alleges a breach of the right of first refusal and seeks specific performance thereof. The second claim alleges that the rights of Maldonado and his entities under the REA are junior to those of BG Plaza LLC insofar as they concern the BG Plaza Property sold by the Debtor and Jessen to BG Plaza LLC, and seeks a declaratory judgment thereof.

On August 28, 2007, this Court retained jurisdiction to hear and decide the specific performance claim made in the 2006 State Court Complaint as a contested matter under Fed. R. Bankr. P. 9014. The Court specifically reserved jurisdiction "over the claim made by Battle Ground Plaza, LLC, concerning the rights of the respective parties under the reciprocal easement agreement." The Court made a determination of the specific performance claim, which was affirmed by Ninth Circuit Bankruptcy Appellate Panel and is now on appeal to the Ninth Circuit Court of Appeals.

On January 29, 2009, BG Plaza LLC moved in State Court for summary judgment on issues concerning the rights of the parties under the REA. The State Court stayed the

proceeding pending a determination by this Court as to whether it will accept jurisdiction of the priority claim.

On March 26, 2009, the Jessen Estate filed its Motion for Summary Judgment on BG Plaza LLC's priority claim, requesting that this Court retain jurisdiction and enter a judgment against BG Plaza LLC.[2] On May 21, 2009, the Debtor joined in the summary judgment motion. BG Plaza LLC filed a response to summary judgment, contending that this Court does not have jurisdiction, that the Jessen Estate is not the real party in interest, and that the November 2005 Sale Order does not preclude its priority claim.

**II**

**CONCLUSIONS OF LAW**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment should be granted if, after taking all reasonable inferences in the nonmoving party's favor, the court finds that no reasonable jury could find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505 (1986).

**A.    Jurisdiction**

The Jessen Estate contends that this Court has ancillary jurisdiction to hear and resolve the priority dispute between BG Plaza LLC and Maldonado and his entities. Its argument rests on the assertion that to resolve this dispute, the Court's November 2005 Sale Order must be interpreted. BG Plaza LLC, however, contends that the Court does not have

---

[2] Similar to the specific performance claim, and with the consent of the parties, the Court considered the priority claim as a contested matter under Fed. R. Bankr. P. 9014.

MEMORANDUM DECISION - 6

jurisdiction because the ½ Acre Parcel has been sold and is no longer estate property, and the priority dispute is between two non-debtor entities, Maldonado and BG Plaza LLC.

"Ancillary jurisdiction may rest on one of two bases: (1) to permit disposition by a single court of factually interdependent claims, and (2) to enable a court to vindicate its authority and effectuate its decrees." Sea Hawk Seafoods, Inc. v. Alaska (In re Valdez Fisheries Dev. Ass'n, Inc., 439 F.3d 545, 549 (9th Cir. 2006) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 379-80, 114 S. Ct. 1673 (1994)). A "bankruptcy court plainly ha[s] jurisdiction to interpret and enforce its own prior orders." Travelers Indem. Co. v. Bailey, --U.S.--, 129 S. Ct. 2195, 2005 (2009) (citing Local Loan Co. v. Hunt, 292 U.S. 234, 239, 54 S. Ct. 695 (1934)). A bankruptcy court's ancillary jurisdiction is not terminated when a plan of reorganization has been confirmed or a case has been closed or dismissed. See, e.g., Tsafaroff v. Taylor (In re Taylor), 884 F.2d 478, 481 (9th Cir. 1989). A bankruptcy court's jurisdiction to interpret and effectuate its orders is limited by the Ninth Circuit's prohibition barring the bankruptcy court from granting "'new relief *independent of its prior rulings*.'" Aheong v. Mellon Mortg. Co. (In re Aheong), 276 B.R. 233, 240 (9th Cir. BAP 2002) (quoting Taylor, 884 F.2d at 481).

The first basis for ancillary jurisdiction does not apply here, as there are no interdependent claims at issue for this Court's determination. The question, then, is whether BG Plaza LLC's priority claim requires this Court to interpret and/or effectuate the November 2005 Sale Order. The Jessen Estate argues that the November 2005 Sale Order is this Court's "express approval of the REA as a fulfillment of the terms of the purchase agreement under which Ray and Jessen sold the [1/2 Acre] Property to Maldonado." Thus, as set forth in the Jessen Estate Reply, a ruling that BG Plaza LLC's interest in the BG Plaza Property is

MEMORANDUM DECISION - 7

"senior" to Maldonado's interest vis-à-vis the REA would require a court "to vacate and roll back this Court's Sale Order by retroactively removing a specific contractual right granted to Maldonado under the purchase agreement for the parcel; namely, the right to a reciprocal easement for access and parking."  Conversely, BG Plaza LLC contends that its claim for declaratory judgment is merely a garden variety priority issue over non-estate property between two non-debtor entities that does not require this Court to interpret or effectuate the November 2005 Sale Order.

BG Plaza LLC may be correct in the final analysis that the this Court is without jurisdiction to set the priorities of the parties, as no party sought specific approval of the subsequently signed REA or a determination of its priority status; accordingly, the relative priorities of the REA may not undermine the November 2005 Sale Order.  The Court concludes, however, that at least initially it is necessary to interpret its November 2005 Sale Order for the limited purpose of articulating what, if anything, the order approved and/or authorized with respect to the REA.  The scope of the November 2005 Sale Order is at the heart of the Jessen Estate's defense to BG Plaza LLC's declaratory judgment action, and only this Court is in the position to interpret that order.  As this issue, however, is not ripe for consideration for the reasons set forth below, the Court will deny without prejudice the Jessen Estate's motion and BG Plaza LLC's request for summary judgment.

**B.   Real Party In Interest**

BG Plaza LLC contends that the Jessen Estate is not the real property in interest; rather, the priority dispute is between BG Plaza LLC and Maldonado.  Conversely, the Jessen Estate contends that it clearly is a real party in interest to challenge BG Plaza LLC's priority claim in its capacity as a co-seller with the Debtor of the ½ Acre Parcel sold to Maldonado,

and because Maldonado has brought cross claims against the Jessen Estate and the Debtor arising out of BG Plaza LLC's claims against it. The Court will determine the real parties in interest for the purpose of the limited issue addressed by the Court above.[3]

Fed. R. Civ. P. 17(a) (Rule 17(a)), made applicable by Fed. R. Bankr. P. 7017, applies in contested matters pursuant to Fed. R. Bankr. P. 9014(c). Rule 17(a)(1) requires that an action be "prosecuted in the name of the real party in interest." "The effect of this passage is that the action must be brought by the person who, according to the governing substantive law, is entitled to enforce the right." 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1543 (2d ed. 2009).

The Court concludes that the Jessen Estate and the Debtor are real parties in interest, as the Jessen Estate and the Debtor are the current owners of the BG Plaza Property. BG Plaza LLC characterizes the priority dispute as being between it and Maldonado as to their respective interests in the BG Plaza Property. But while BG Plaza LLC is the purchaser of the BG Plaza Property, there is no dispute that the sale of this property has not yet closed. As such, BG Plaza LLC does not hold title to the subject property.

> Purchase and sale agreements, also called "earnest money agreements," are contracts "whereby essentially an owner promises to convey, and purchaser to pay . . . for real estate." 18 WILLIAM B. STOEBUCK AND JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 16.1, at 215 (2004) (WPI). These agreements do not themselves convey title; instead, purchase and sale agreements are promises to convey title in the future. 18 WPI § 16.1, at 216.

Geonerco, Inc. v. Grand Ridge Properties IV LLC, 146 Wn. App. 459, 465, 191 P.3d 76 (2008). BG Plaza LLC has not established an ownership interest in the BG Plaza Property.

---

[3] While BG Plaza LLC's real party in interest argument addresses only the Jessen Estate, since the Debtor joined in the Jessen Estate's summary judgment motion, the Court will extend its conclusion on the issue to the Debtor as well.

MEMORANDUM DECISION - 9

Therefore, any dispute regarding the priority of interests in the BG Plaza Property as established by the REA would necessarily involve the current owners of the property: the Jessen Estate and the Debtor.

### C. Ripeness of the Priority Dispute

The Jessen Estate contends that the priority dispute is not ripe for determination. BG Plaza LLA and Maldonado, through his participation in oral argument, disagree.

"Ripeness is more than a mere procedural question; it is determinative of jurisdiction." S. Pac. Transp. Co. v. City of Los Angeles, 922 F.2d 498, 502 (9th Cir. 1990). The ripeness doctrine is based in part upon the Article III requirement that courts decide only cases or controversies. W. Oil and Gas Ass'n v. Sonoma County, 905 F.2d 1287, 1290 (9th Cir. 1990) (citing Regional Rail Reorganization Act Cases, 419 U.S. 102, 138, 95 S. Ct. 335, 356 (1974)). "If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." S. Pac. Transp. Co., 922 F.2d at 502.

The Uniform Declaratory Judgments Act set forth in RCW 7.24.010 grants courts the power to "declare rights, status and other legal relations . . . ." "In applying the Uniform Declaratory Judgment Act, [Washington courts] have firmly maintained that, absent issues of major public importance, a justiciable controversy must exist before a court's jurisdiction may be invoked under the act." Nollette v. Christianson, 115 Wn.2d 594, 598-99, 800 P.2d 359 (1990). A justiciable controversy is:

> "(1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive."

Nollette, 115 Wn.2d at 599 (quoting Diversified Indus. Dev. Corp. v. Ripley, 82 Wn.2d 811, 815, 514 P.2d 137 (1973)).

The Court agrees that BG Plaza LLC's claim of priority in the BG Plaza Property vis-à-vis the REA is not ripe. While BG Plaza LLC is the purchaser of the BG Plaza Property, there is no dispute that the sale of this property has not yet closed. As such, BG Plaza LLC does not yet hold title to the property, and thus has not established an ownership interest in the BG Plaza Property. Furthermore, the Jessen Estate and the Debtor have appealed the State Court's Amended Order of Specific Performance ordering them to remediate the property and sell it to BG Plaza LLC, and have posted supersdeas bonds staying the State Court's Order.

Because BG Plaza LLC does not have an ownership interest in BG Plaza LLC, its claim of a priority interest in the property is merely possible, hypothetical, or speculative. This conclusion is further supported by the Debtor's Plan, which authorizes a different purchaser in the event the pending sale to BG Plaza LLC fails to close. Thus, there is no justiciable controversy that is ripe for this Court's consideration.

Accordingly, both the Jessen Estate's and BG Plaza LLC's requests for summary judgment are denied without prejudice as this action is not ripe for review by this Court.

DATED: July 28, 2009

*Paul B. Snyder*
_____
Paul B. Snyder
U.S. Bankruptcy Judge

MEMORANDUM DECISION - 11